UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13-cv-339-FDW

| ANTAUN K. SPENCER, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| vs. | ) |  |
|  | ) | **ORDER** |
| LAWRENCE PARSONS, Superintendent, Lanesboro Correctional Institution, et al., | ) |  |
| Defendants. | ) |  |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendants Jesse Williams, Kyle Allred, Calvin Young, Lawrence Anderson, and Tara Rogers. (Doc. No. 41).

**I.    BACKGROUND**

A.    Procedural Background

Pro se Plaintiff Antaun Spencer is a former inmate of the North Carolina Department of Public Safety ("NCDPS"). Plaintiff was serving a seven-year sentence for robbery with a dangerous weapon. On June 4, 2013, while still incarcerated at Lanesboro Correctional Institution in Polkton, North Carolina, Plaintiff filed this action, pursuant to 42 U.S.C. § 1983, in which he alleged that Defendants, Lanesboro correctional officers at all relevant times, subjected him to excessive force and inhumane prison conditions. On June 6, 2013, the Court conducted a frivolity review and dismissed Defendant Lawrence Parsons while allowing Plaintiff's claims to

1

proceed against the remaining Defendants. (Doc. No. 7).

On October 17, 2014, the remaining Defendants filed the pending motion for summary judgment. (Doc. No. 41). On October 29, 2014, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the motion for summary judgment and of the manner in which evidence could be submitted to the Court. (Doc. No. 43). Plaintiff did not file a response to the summary judgment motion.[1] Additionally, Plaintiff failed to notify this Court of his new address following his release from prison.[2]

  B.  Factual Background

  1. The Alleged Excessive Force Incident and the Summary Judgment Evidence

  a. Plaintiff's Allegations

As noted, Plaintiff did not respond to the summary judgment motion, and the time to do so has passed. Therefore, the only materials presented by Plaintiff as to his claim are the allegations in his Complaint. Plaintiff alleged in the Complaint that on December 18, 2012, he was "forced" into full restraints for 48 hours and compelled to sleep, sit, and stand, on cold steel and concrete for over three days, with no bedding and no clothing but his boxers, t-shirt, and socks. (Doc. No. 1 at 4). He alleged that he was allowed "few to no" breaks to use the restroom

---

[1] Because Plaintiff did not file a response to the summary judgment motion, he is deemed to have abandoned his claims. See Crosby v. Gastonia, 635 F.3d 634, 637 n.3 (4th Cir. 2011). In an abundance of caution, however, the Court will address the merits of Plaintiff's claims.

[2] NCDPS records indicate that Plaintiff was released from NCDPS custody on August 6, 2014. Plaintiff's failure to notify the Court of his new address renders this entire action subject to dismissal without prejudice based on Plaintiff's failure to prosecute the action. Accord Walker v. Moak, Civil Action No. 07-7738, 2008 WL 4722386, at *3 (E.D. La. Oct. 22, 2008) (dismissing without prejudice a § 1983 action for failure to prosecute under Rule 41(b) of the Federal Rules of Civil Procedure where the plaintiff did not notify the court of his new address upon his release from jail). Because the Court is dismissing the action with prejudice on the merits, the Court declines to dismiss the action based on failure to prosecute.

and had no relief except when the officers loosened the restraints at mealtimes so he could eat. (Id.). He alleged that the cell and cell surfaces were freezing because it was December, and the light was left off at all times. (Id.). He also alleged that the restraints were "radically tight" and the "weight of the chains became a hardship." (Id.).

Plaintiff alleged that because "the full restraints became such a torment," he beat them against the wall until they came off. (Doc. No. 1 at 5). He alleged that Defendants Williams, Allred, Young, Anderson, and Rogers, accompanied by Officer Smith (not a defendant), came to Plaintiff's cell, pulled him out from under his bunk where he was hiding, and dragged him out. (Id.). He alleged that they did not bring a camera or "anticipated use of force" gear. (Id.). He alleged that Defendant Williams then punched him in the testicles and officers Williams, Allred, and Anderson

> heaved Plaintiff in the air and slammed Plaintiff face-first into the concrete floor. [Defendant] Allred then began viciously stomping Plaintiff on his back, then he seized Plaintiff['s] left arm and pulled it backwards. While [Defendant] Allred pulled Plaintiff's left arm, [Defendant] Williams captured Plaintiff's right arm and yanked it backwards. Their brutality caused [Plaintiff] to scream out in pain, then Officer Rogers stepped in Plaintiff['s] cell and starting kicking Plaintiff in his ribs.

(Id.). Plaintiff alleged that, at that point, one of Defendants, whom he cannot identify, pulled his boxers down to his ankles. (Id.). He alleged that Defendants "took the waist chains and dangled them over, on and around [his] butt [and] let the end of the chain touch [his] anus and started twirling the chain on or around [his] butt cheeks laughing." (Id.). Plaintiff alleged that the restraints were then reapplied behind his back and he was left with his boxers down to his ankles until shift change. (Id.). He alleges that this incident caused him such mental stress that he attempted to kill himself. (Id.).

      b.      Defendants' Summary Judgment Materials

In support of their summary judgment motion, Defendants have offered the following evidence: Plaintiff's Offender Information Report, Plaintiff's Incident Report, Defendant Allred's Interrogatory Responses, Defendant Williams' Interrogatory Responses, and the affidavits of Defendants Allred, Rogers, Williams, and Young. See (Doc. Nos. 41-1 to 41-7). Defendants' summary judgment materials show that, while incarcerated in the custody of NCDPS, Plaintiff was a validated Security Threat Group member, belonging to the United Blood Nation. (Doc. No. 41-1 at 1: Pl.'s Offender Information Report, Defs.' Ex. A). Plaintiff's classification was Maximum Control (or "MCON"), which is the classification status established for the isolation of inmates who pose an imminent threat to the safety of staff or other inmates, or who otherwise pose a serious threat to the operational integrity of the prison facility. As an MCON inmate, Plaintiff was housed on Anson Unit. (Doc. No. 41-5 at ¶ 4: Allred Aff.). Plaintiff had a history of freeing himself from restraints. (Id. at ¶ 6; Doc. No. 41-7 at ¶ 5: Williams Aff.). He also had a history of assaulting staff and making false allegations regarding staff. (Doc. No. 41-7 at ¶ 8; Doc. No. 41-5 at ¶ 10).

On December 4, 2012, Plaintiff had an encounter with Defendant Williams, a sergeant, wherein Plaintiff attempted to assault Williams as Williams was trying to remove him from the shower. (Doc. No. 41-4 at 2; 5: Interrogatory Responses of Williams, Defs.' Ex. D). Williams and other staff quickly subdued Plaintiff, and no one was injured. (Id.). On December 18, 2012, at around 7:30 p.m., Plaintiff was once again in the shower. (Doc. No. 41-2: Incident Report, Defs.' Ex. B). When Defendant Young went to get Plaintiff out of the shower, Plaintiff backed away from the shower door to the back of the shower and, with a big smile on his face, said, "Go get that big-head Sergeant Williams and tell him I'm not coming out of this shower. This is Round Two." (Doc. No. 41-1 at 1). Plaintiff then dropped to the floor of the shower and started

4

screaming, "Stop raping me! Stop raping me!" (Id.).

Defendant Williams was summoned to the scene, where Plaintiff was still screaming. (Id.). Plaintiff refused a command to come out, so officers brought a shield and entered the shower to retrieve him. (Id.). Plaintiff was then restrained without resisting and was removed from the shower without incident. (Id.). He was escorted to the holding cell, where he was placed in full restraints per policy for behavioral issues. (Doc. No. 41-5 at ¶ 4). Full restraints include handcuffs (in front), a black tamper-proof box, waist chain, leg cuffs, and a padlock to secure the restraints. (Id.). Plaintiff's property was removed from his cell as well, and he was then placed back in his cell. (Id.). Defendants state that the placement of Plaintiff in full restraints for 48 hours, and the removal of his property for the same length of time, were behavioral sanctions that were authorized by the Lanesboro Standard Operating Procedures for close-custody inmates. See (Doc. No. 41-5 at ¶¶ 11; 12; pp. 4-5). While in restraints, Plaintiff was wearing a t-shirt, boxers, and socks, in accordance with policy for inmates in full restraints. (Id. at ¶ 8).

At around 9:30 that night, Defendant-correctional officers Rogers and Young observed Plaintiff standing alone in the middle of his cell, once again screaming "Stop raping me! Stop raping me!" while attempting to free himself from the restraints.[3] (Doc. No. 41-6 at ¶ 4: Rogers Aff.; Doc. No. 41-8 at ¶ 4: Young Aff.). They immediately reported the incident to Defendant-sergeants Allred and Williams, who reported to the scene. (Doc. No. 41-6 at ¶ 5; Doc. No. 41-8 at ¶ 5; Doc. No. 41-5 at ¶ 5; Doc. No. 41-7 at ¶ 5). Defendants Allred and Williams also

---

[3] Defendants contend that, although Plaintiff alleges he beat the restraints against the wall and broke them because "they had become such a torment," (Doc. No. 1 at 5), in actuality the event of repositioning the restraints took place less than three hours after they were first applied. See (Doc. No. 42 at 5, n.1).

observed Plaintiff trying to wiggle out of the restraints. (Doc. No. 41-5 at ¶ 6; Doc. No. 41-7 at ¶ 5). Having personally observed Plaintiff attempting to remove the restraints, and knowing he had a history of doing so successfully, the sergeants decided to enter the cell and reposition the restraints behind Plaintiff's back so that he could not tamper with them. (Id.). Defendants Allred and Williams entered the cell and repositioned the restraints to Spencer's back without incident. (Id.; Doc. Nos. 41-3; 41-4). Plaintiff continued to scream "Stop raping me!" as Defendants Allred and Williams repositioned the restraints. (Doc. No. 41-6 at ¶ 6). Finally, after the officers exited Plaintiff's cell, Plaintiff continued to scream "Stop raping me!" (Doc. No. 41-8 at ¶ 5).

All Defendants assert in their affidavits that no force was used in the reapplication of the restraints, and Plaintiff was not injured. Defendants assert that Plaintiff's boxers were never pulled down. (Doc. No. 41-7 at ¶ 6). Defendants assert that, contrary to Plaintiff's allegations, he was not pulled out from under the bunk because he was standing in the middle of the cell when the sergeants entered. (Doc. No. 41-5 at ¶ 8). Defendants assert that Plaintiff was not punched, kicked, manhandled, or assaulted in any way. (Id.; Doc. No. 41-7 at ¶ 6). Furthermore, he offered no resistance to the repositioning of the restraints, so there was no need for any force to be used. (Doc. No. 41-5 at ¶ 8). Defendants further assert that no incident report was generated regarding the occurrence based on the simple fact that no "incident" took place. (Id.). For the same reason, there was no need to assemble a use-of-force team or retrieve a camera to record the non-event. (Doc. No. 41-7 at ¶ 7). Plaintiff reported his allegations to the prison, which promptly undertook an investigation, and Plaintiff's allegations were determined to be unfounded. (Doc. No. 41-2).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

### III. DISCUSSION

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Albers, 475 U.S. at 320-21. Furthermore, the Supreme Court has recently reiterated that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010). In Wilkins v. Gaddy, the Supreme Court observed:

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." The extent of injury may also provide some indication of the amount of force applied. As we stated in Hudson, not "every malevolent touch by a prison guard gives rise to a federal cause of action." "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.

Id. at 37-38 (citations omitted).

The Eighth Amendment also protects prisoners from inhumane conditions of

confinement.  Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).  Extreme deprivations are required, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  The plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm.  Farmer v. Brennan, 511 U.S. 825, 847 (1994).  A plaintiff must also allege "a serious or significant physical or emotional injury resulting from the challenged conditions."  Strickler v. Waters, 989 F.3d 1375, 1381 (4th Cir. 1993).

First, Plaintiff alleged in the Complaint that his constitutional rights were violated when he was held in full restraints for 48 hours.  He does not allege that he was held any longer than 48 hours, and he admits that he was allowed to relieve himself (though claiming opportunities were "few to none") and that the restraints were loosened for meals. (Doc. No. 1 at 4).  He alleged that the restraints allowed him to lie down, but he alleged that they forced him to sleep in uncomfortable positions. (Id.).  He claims that depriving him of property other than his boxers, shirt, and socks meant that he was left to suffer the cold, and he further claims that the restraints were painful and uncomfortable. (Id.).

Defendants have produced evidence on summary judgment to support their contention that the placement of Plaintiff in full restraints was not done maliciously and sadistically for the very purpose of causing harm.  Defendants have shown through their summary judgment materials that Plaintiff was placed in full restraints for a 48-hour period only after disrupting facility operations by refusing to exit the shower, which in turn required the time and attention of several officers to compel him to do so.  Defendants' undisputed evidence on summary judgment further shows that Plaintiff's disruptive behavior extended to screaming "Stop raping me!" when

9

no officer was even touching him, and that he later repeated his statement that same evening, even after being placed in full restraints. Moreover, Defendants assert that the placement of Plaintiff in full restraints was fully in line with facility procedure, and any discomfort he experienced was incidental to this lawful procedure. Furthermore, Plaintiff has offered no evidence on summary judgment to rebut Defendants' evidence showing that Plaintiff had a known history of falsely accusing officers of misconduct. In short, Defendants have presented unrefuted evidence showing that the relatively brief time in full restraints that Plaintiff experienced simply did not rise to the level of a deprivation of an Eighth Amendment right.

As to Plaintiff's excessive force claim, Defendants' summary judgment materials show that on December 18, 2012, no force of any kind was applied against Plaintiff. Even if the minimal interaction necessary to re-fasten his restraints behind his back constituted a use of force, such force was applied in a good faith effort to restore discipline and order. As Plaintiff has not responded to the summary judgment motion, he is deemed to have abandoned this claim and, in any event, he has presented no evidence to rebut Defendants' evidence regarding use of force. Plaintiff's allegations of excessive force and sexual assault are supported only by his own unsupported statements and therefore as a matter of law are simply insufficient to preclude summary judgment. "[A] self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment." Williams v. Giant Food, Inc., 370 F.3d 423, 433 (4th Cir. 2004). In sum, for the reasons stated herein, Defendants are entitled to summary judgment as to Plaintiff's claims.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment, (Doc. No. 41), is **GRANTED**, and this

action is dismissed with prejudice.

2. The Clerk is directed to terminate this action.

Signed: January 20, 2015

Frank D. Whitney
Chief United States District Judge